IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ROXANNE JANETTE POE, | ) | Case No. 05-23470 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ROXANNE JANETTE POE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-2017 |
| | ) | |
| PENNSYLVANIA HIGHER | ) | |
| EDUCATION ASSISTANCE | ) | |
| AGENCY, D/B/A AMERICAN | ) | |
| EDUCATION SERVICES, ET AL., | ) | |
| | ) | |
| Defendants. | | |

**<u>MEMORANDUM OPINION</u>**

In this adversary proceeding, Plaintiff Roxanne Janette Poe ("Debtor") seeks a determination, pursuant to 11 U.S.C. § 523(a)(8), that her student loan debt, owed to Defendant Educational Credit Management Corporation ("ECMC" or "Defendant") should be discharged for the reason that accepting the debts from discharge would impose upon her an undue hardship. This is a core proceeding of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and which it may hear and determine pursuant to 28 U.S.C. § 157(a), 157(b)(1) and 157(b)(2)(I). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the Debtor has not satisfied her burden of proving that repayment of the debts owed to ECMC would impose an undue hardship

upon her and that they are, therefore, excepted from discharge under § 523(a)(8).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Debtor is a 37-year-old divorced mother of two young children, ages two and six.  She graduated with a degree from Southwest Baptist College in Psychology in 1997 and obtained a Master's Degree from Webster University in Counseling in 2000.  In order to finance her education, she incurred eleven different student loans, with dispersed amounts of $46,990.00 on which the aggregate balance as of July 11, 2006 was $61,492.05 with interest accruing at the rate of $12.81 per day thereafter.[1]  Plaintiff is, and has been for approximately the last year, employed by University Behavioral Health as an intake coordinator.  She is paid on a monthly basis and her net monthly salary is $2,050.90.[2]  Debtor testified that $300.00 of that sum is extra compensation for being on-call for two weeks during the month at times during which she would otherwise be off.  Her understanding is that she is paid the sum of $150.00 for each on-call period.  After examination of previous pay statements for periods during which Debtor was not on-call, it is appears that the pay adjustment is actually $250.00 per month.  Debtor contends that she may not be able to continue to take advantage of this additional compensation for the reason that her parents, who presently provide childcare for her during those periods when she is on-call and called to duty, will be traveling during the winter and that she has not made satisfactory alternative arrangements.

Debtor testified that her present position is the highest paying job that she has ever held.

---

[1] Plaintiff's Ex. 4; Defendant's Ex. 1.

[2] Plaintiff's Ex. 1.

Her tax returns indicate that her adjusted gross income for the year 2005 was $20,938.00[3] and for 2004 was $7,185.00.[4] Those returns also indicate that the Debtor received substantial tax refunds in each of those years, $3,150.00 in 2004 and $5,831.00 in 2005. She testified that her withholding status for the year 2006 is identical to what she had claimed for the tax year 2005. In addition to her salary, Debtor also receives the sum of $457.00 in child support from the father of her older daughter.

Her schedule of expenses, Schedule J, filed on October 15, 2005, shows monthly expenses of $2,746.00. At the time that schedule was filed, Debtor was living with her parents. She had left her husband after assault and physical threats and moved in with her parents in February 2004. She continued to live with them until sometime in August 2006, at which point she made separate living arrangements.

## II. DISCUSSION

### A. Applicable Legal Principles on Determination of Undue Hardship

Debtor contends that it would be an undue hardship for her to repay the remaining amount due on her student loans. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001); *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981). Unfortunately, the Code contains no definition of the phrase "undue

---

[3] Defendant's Ex. 6.

[4] Defendant's Ex. 7.

hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).  In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable, necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case.  *Long*, 322 F.3d at 554; *Ford*, 269 B.R. at 676.  The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged.  *Long*, 322 F.3d at 554.  The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his student loan without reducing what the debtor and his dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living."  On one end of the spectrum, it is clearly not enough for a debtor simply to demonstrate that payment of a student loan would require a readjustment of his financial situation or a diminution in lifestyle.  *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817 (N.D. Fla. 2003).  A debtor is therefore not entitled to maintain the standard of living enjoyed before the filing of the petition.  *See Stanley*, 300 B.R. at 817.  On the other hand, it is not necessary that a debtor live in abject poverty in order to demonstrate undue hardship and

obtain a discharge of student loans. *See Stanley*, 300 B.R. at 818.  A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment. *Gill v. Nellnet Loan Services, Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *see also Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002) (minimal standard of living includes the following elements: shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation).

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility.  As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *VerMaas v. Student Loans of North Dakota (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002).  Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

B. Analysis of the Totality of the Circumstances

1. Past, Present and Reasonably Reliable Future Financial Resources

The first factor that the Court must consider is the Debtor's past, present and reasonably reliable future financial resources. The Debtor's current net monthly salary is $2,050.90. In addition to that amount, the Debtor receives each month the sum of $457.00 child support for her older daughter. As noted above, the Debtor has received tax refunds in each of the prior tax years, including a refund of $5,831.00 in the year 2005. Her withholding status for the current year is the same. It is therefore reasonable to assume that the Debtor will receive a tax refund in the year 2006 of approximately the same amount. The tax refund provides additional monthly income of approximately $485.92. Aggregating these sums, the Debtor's available monthly income is approximately $2,993.82. There is no reason to believe it will change significantly in the immediate future in either direction. There is no evidence that the Debtor is underemployed or that she is likely to obtain a promotion or a raise in the immediate future. Neither is there any evidence that the Debtor will not be continuously employed in this position or that her income will decline.

2. Debtor's Reasonable Necessary Living Expenses

The evidence raises several issues about the Debtor's living expenses. Her Schedule J shows expenses of $2,746.00 per month.[5] After assessing the evidence, the Court has determined that figure must be adjusted for several reasons. First, her testimony is that she did not actually always incur these expenses on a monthly basis. For example, testifying about the $200.00 a month for electricity and heat shown on her schedule, she testified that she made that

---

[5]Defendant's Ex. 9.

payment "several times" and not every month. Specifically, she said she did not make that payment when her parents were there if she did not feel she could afford it. Second, and more importantly, at trial the Debtor testified that she is no longer living with her parents. The expenses set forth in her Schedule J, therefore, no longer provide an accurate picture of her actual expenses in her current living arrangement. There is, therefore, no evidence in the record before the Court as to the Debtor's current and likely future actual living expenses. For example, Debtor did not testify as to what her current monthly mortgage or rent payment is, what her current utility payments are or how her food expenses may have changed as a result of the change in living arrangements. As noted above, the Debtor bears the burden of proof on the issue of undue hardship. In part, that requires that she demonstrate to the Court her current income and expense situation. *See Long*, 322 F.3d at 554. Without evidence of her actual current expenses, the Court is unable to determine whether the Debtor has excess monthly net income with which to make payments on any of her student loans. The Debtor testified generally that her expenses may actually be higher in her current living arrangement. That conclusory assertion hardly provides the Court with the detailed evidence of her monthly expenses required in order for it to make a determination as to her ability to pay.

      The evidence also indicated that some of the expenses listed on the Schedule J, to the extent it is still relevant, have declined or are likely to decline in the near future. It also raises questions about whether some of those expenses are necessary and reasonable. For example, the Debtor testified that her telephone expense has been reduced from the $80.00 shown on her Schedule J to $24.00 per month, a reduction of $54.00. Schedule J lists the Debtor's monthly childcare expenses as $732.00. Those apparently consist (or consisted) of a daycare for her

younger daughter and before and after school care for her older daughter.  At trial, Debtor testified that she pays anywhere from $480.00 to $570.00 per month in daycare, depending upon the month, and $40.00 to $50.00 per month in supplemental care for her school-aged daughter.  Thus, her actual childcare expenses range from $520.00 to $620.00 per month.  Moreover, as Defendant points out, her childcare expenses will decline further when her younger child enters school.  Among the Debtor's expenses listed on Schedule J is $40.00 per month for cable television.  The Court does not believe that cable television is necessary to maintain a minimal standard of living and, therefore, finds this expense unnecessary and unreasonable. *See Bott v. Educational Credit Mgmt. Corp.*, 324 B.R. 771, 777 (Bankr. E.D.Mo.2005)**;** *Wardlow v. Great Lakes Higher Education Corp.*, 167 B.R. 148, 151 (Bankr.W.D.Mo.1993).  Debtor also testified that her current vehicle, a 1994 Mercury with approximately 130,000 miles, has mechanical problems.  Specifically, she testified that it is burning oil and needs heater repairs.  Debtor believes she has to repair the vehicle in the near future and may have to replace it before long.  The record, however, contains no evidence as to the repair costs or the likely monthly replacement costs for the vehicle.  Accordingly, there is no basis on which the Court might make an additional monthly allotment for vehicle replacement costs.

All of this evidence suggests that the Debtor's monthly expenses as shown on her Schedule J should be adjusted downward in the amount of approximately $206.00 – a $56.00 reduction in her telephone expense, $40.00 for the elimination of the monthly cable expense and $100.00 for a reduction of childcare costs.  Making this adjustment, her monthly expenses are $2,540.00.  Comparing that to her monthly net income as calculated above, the Debtor has disposable income of $453.82 per month with which to make payments on student loans.  As

noted above, Debtor suggested that she may be losing $250.00 of her monthly income as a result of her inability to remain "on call" because of a loss of childcare. It is not unreasonable to assume that the Debtor will be able to make some alternative arrangements to provide for childcare in the event she should be called in to work during those periods when she is on call. That will obviously involve some costs, but should still result in a net addition to her base income. However, even if this Court were to discount her income for the possibility of loss of the entire on call bonus, she would still have, according to the Court's calculations, the sum of approximately $203.82 per month with which to make payments on her student loans.

Plaintiff has eleven different student loans which have not been consolidated. Accordingly, the Court must determine whether repayment of the student loans constitutes an undue hardship on a loan- by-loan or debt-by-debt basis. *See Nelson v. Iowa College Aid Comm'n., et al.*, 2005 WL 1320139 (2005) *citing Andresen* 232 B.R. at 136-137. In other words, even if Debtor may not have the ability to make payments on all of her student loans and maintain a minimal standard of living, if she can afford to make payments on some of the loans, those debts would not be dischargeable as imposing an undue hardship on her. There is, however, no evidence in the record as to the amount of the required payments on any of the Debtor's eleven student loans. There is no evidence as to the amount of payment called for by the promissory notes and no evidence as to what the Debtor's payments might be under any restructuring option for which she might be eligible. There is, therefore, no basis for this Court to make a finding that Debtor is unable to pay any of her student loans. As noted above, a Debtor has the burden of proof on this issue. If the record is deficient and does not permit the Court to determine whether her excess net monthly income is sufficient to make payments on

any of the loans, the Court cannot make a finding that the repayment of any of those loans would constitute an undue hardship. *See Morris,* 277 B.R. at 914.

### 3. Other Unique Circumstances

The Debtor's age and health are factors which the Court may take into consideration in assessing whether repayment of her student loans would constitute undue hardship. The Debtor is only 37 years old and has approximately three decades of work life remaining. She suffers from no significant health problems and neither do her children. Accordingly, there is no indication that her physical conditions will impose limitations on her ability to earn or unusual stress on her monthly budget.

The Court may also consider Debtor's efforts to repay or negotiate repayment of her student loans. The record indicates that Debtor made only approximately six payments on these loans. She testified that she was not aware of the Income Contingent Repayment Plan or of the William D. Ford Plan for consolidation and restructure of her student loans. She did testify that she was aware of one option pursuant to which payments might be restructured and tiered such that in the early years they would be lower, increasing in the future at a time when either her income might increase or her expenses (such as childcare) declined. Debtor testified that she had, however, not considered this option.

Other factors which the Court may take into consideration in determining whether repayment would constitute an undue hardship are whether the dominant purpose of the bankruptcy petition was to discharge student loan debt and the ratio of student loan debt to total indebtedness. Debtor's Schedule F identifies unsecured creditors holding claims totaling

$58,751.00, of which $56,152.00 was debt owed to holders of student loan claims.[6] The actual student loan debt according to the evidence at the trial is actually in excess of $61,000.00. Accordingly, approximately 96% of the total amount of the unsecured debt set forth in the schedules is student loan debt that the Debtor seeks to discharge.

For all of the above reasons, the Court finds that repayment of the Debtor's student loan indebtedness to ECMC would not impose an undue hardship on her and her dependents pursuant to 11 U.S.C. § 523(a)(8) and it is therefore not dischargeable. It is therefore

ORDERED that the indebtedness owed by Debtor to ECMC not be discharged pursuant to 11 U.S.C. § 523(a)(8).

A separate order will be entered in accordance with Bankruptcy Rule 9021.


DATED:   November 8, 2006                        /s/ Dennis R. Dow
                                                HONORABLE DENNIS R. DOW
                                                UNITED STATES BANKRUPTCY JUDGE

Copies to:

Brian Baehr
Larry Bork

---

[6] Defendant's Ex. 9.